# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

### Case No.: 0:24-cv-60163-RS

```
FILED BY          D.C.

FEB 07 2025

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - FT. LAUD.
```

WELLS FARGO BANK, N.A. AS TRU-  )
STEE FOR BANC OF AMERICA FUND-  )
ING CORPORATION MORTGAGE        )
PASS-THROUGH CERTIFICATES SER-  )
IES 2007-5                      )
      Plaintiff,                )
                 )
Vs.                             )
                 )
CLIFFTON L. SNEED, *et. al*     )
      Defendant.                )

**AMENDED**
**NOTICE OF REMOVAL**
*(Diversity – 28 U.S.C. 1332)*

1. This matter commenced on April 13, 2022 in the 17th Judicial Circuit in and for Broward County, Florida (the "state court"), filed in case number CACE **16-21117**.

2. This is a civil matter of which this Court has original jurisdiction under **28 U.S.C. §1332** – *Diversity Jurisdiction;* and is one which may be removed to this Court by defendant pursuant to the provisions of 28 U.S.C. §1441(b) in that it is a civil proceeding between citizens of different states.

3. Defendant is informed and believes that plaintiff, Wells Fargo Bank N.A. (hereinafter, "WELLS FARGO"), is a "national bank" that designates its Sioux Falls, South Dakota, site as its "main office" (and therefore is treated by most U.S. federal courts as a citizen of South Dakota). *See Rouse v. Wachovia Mortg., FSB,* 747 F. 3d 707 - Court of Appeals, 9th Circuit 2014

1

4. Additionally, none of the named Defendants, including myself, Cliffton L. Sneed, was not, at the time WELLS FARGO filed the state court action, and still are not, citizens of South Dakota.

5. Here, it is alleged that Plaintiff, WELLS FARGO acted without authority and/or without court permission when it filed its April 13, 2022 motion for summary judgment in a Florida State Court. Certainly, Plaintiff knows that the state court cannot grant such motion for summary judgment, prior to Plaintiff complying with federal mortgage servicing laws.

**Argument**

- *WELLS FARGO' Violation of 12 CFR 1024.41(b)(2)(i)(B) Also Violates 12 CFR 1024.41(g) and has Erroneously Deprived Me from Timely Submitting a Complete Loss Mitigation Application*

6. Here, WELLS FARGO, by and through its servicing agent, Specialize Loan Servicing LLC (Collectively, "WELLS FARGO") has purposely failed to comply with 12 CFR 1024.41(b)(2)(i)(B) so that it could attempt to strategically deprive me of the opportunity to timely submit a complete loss mitigation application. After receiving my loss mitigation Application, WELLS FARGO intentionally failed to inform me of additional documents and/or information needed to fully complete my loss mitigation application. Otherwise, the loss mitigation application was complete, or at least facially complete.

7. Additionally, WELLS FARGO violated 12 CFR 1024.41(g)) by moving for an order of sale, and did so, prior to sending me a notice pursuant to 12 CFR 1024.41(b)(2)(i)(B). Moreover, WELLS FARGO initiated the April 13, 2022 state court complaint, prior to sending me notices pursuant to 12 CFR 1024.41(c)(1)(ii)

(*evaluation of complete application* notice), 12 CFR 1024.41(c)(3)(i), (*complete application* notice), and 12 CFR 1024.41(d) (loss mitigation *denial* notice).

8.  12 CFR 1024.41(b)(1) provides that a "servicer shall exercise *reasonable diligence* in obtaining documents and information to complete a loss mitigation application.

9.  Here, it is without dispute that WELLS FARGO failed to promptly exercise "reasonable diligence" in obtaining additional documents and information it needed to complete my loss mitigation application. In fact, WELLS FARGO made no effort whatsoever to obtain additional documents and/or information it needed to complete the application.

10. Moreover, 12 CFR 1024.41(b)(2)(i)(B) provides that "if a servicer receives a loss mitigation application 45 days or more before a foreclosure sale, a servicer shall:

> (B) Notify the borrower in writing within 5 days (excluding legal public holidays, Saturdays, and Sundays) after receiving the loss mitigation application that the servicer acknowledges receipt of the loss mitigation application, and that the servicer has determined that the loss mitigation application is either complete or incomplete. If a loss mitigation application is incomplete, the notice shall state the additional documents and information the borrower must submit to make the loss mitigation application complete and the applicable date pursuant to paragraph (b)(2)(ii) of this section. The notice to the borrower shall include a statement that the borrower should consider contacting servicers of any other mortgage loans secured by the same property to discuss available loss mitigation options.

11. Additionally, the Consumer Financial Protection Bureau (CFPB) commentary contemplates that servicers who foreclose on a home while in violation of § 1024.41(b)(2)(B) also violates § 1024.41(f) or (g).

12. Like the scenario addressed by the CFPB, I submitted my loss mitigation application to WELLS FARGO, but did not receive a written response from WELLS FARGO as required by § 1024.41(b)(2)(B) or (c)(1). As such, by filing the

April 13, 2022 motion for summary judgment, WELLS FARGO has clearly violated § 1024.41(g). See Mortgage Servicing Rules under the Real Estate Settlement Procedures Act (Regulation X), 78 Fed. Reg. 10,696, 10,821 (Feb. 14, 2013); also see *Ho v. Wells Fargo Bank, N.A.*, (unpublished); Case number 15-cv-81522-KAM (11th Cir. 2018)

**WHEREFORE**, I, the Defendant Clifton L. Sneed, respectfully request this Court strike Plaintiff's April 13, 2022 state court Motion for Summary judgment and for any further relief deems just and proper.

Clifton L. Sneed
12757 NW 13th Street
Sunrise, Florida 33323